1  MARTIN MUCKLEROY
   MUCKLEROY LUNT
2  6077 S. Fort Apache Road, Suite 140
   Las Vegas, NV 89148
3  Telephone:    (702) 907-0097
4  Facsimile:    (702) 938-4065
   martin@muckleroylunt.com
5
6  *Counsel for Plaintiff*

7                    **UNITED STATES DISTRICT COURT**

8                          **DISTRICT OF NEVADA**

9

10 | BRENT JAY, an individual | ) CASE NO.: |
   |---|---|
   | Plaintiff | ) VERIFIED COMPLAINT FOR: |
   | vs. | ) (1) VIOLATIONS OF THE SECURITIES ACT OF 1933; (2) VIOLATIONS OF THE SECURITIES EXCHANGE ACT OF 1934; (3) UNFAIR BUSINESS ACTS OR PRACTICES; (4) UNLAWFUL BUSINESS ACTS OR PRACTICES; (5) FRAUDULENT BUSINESS ACTS OR PRACTICES; (6) BREACH OF CONTRACT; (7) BREACH OF THE COVENANT OF GOOD FAITH & FAIR DEALING; (8) UNJUST ENRICHMENT; (9) CONVERSION; (10) PROMISSORY ESTOPPEL; (11) FRAUD; and (12) NEGLIGENT MISREPRESENTATION |
   | SCOTT WALKER, an individual; DISTRIBUTED NETWORK ADVISORS, LLC, a Limited Liability Company; BRIAN SANDS, an individual; APRIL SANDS, an individual; BROCK PIERCE, an individual; JAMES GLASSCOCK, an individual; and DOES 1-20, inclusive | |
   | Defendants | |
   | | ) JURY TRIAL DEMANDED |

- 1 -

**JURISDICTION**

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, 15 U.S.C. § 77v, and 15 U.S.C. § 78aa because Plaintiff alleges violations of the Securities Act of 1933 and Securities Exchange Act of 1934.

2. This Court has personal jurisdiction over Defendants because Defendants either conduct business in this District or are present in this District for jurisdictional purposes. Defendants have sufficient minimum contacts with this District as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice. Defendants solicited investors in this District to purchase tokens and obtained money or valuable cryptocurrency from those investors and Defendants solicit consumers in this District to utilize their platform and services.

3. Defendants have purposefully availed themselves of the benefits of operating in this jurisdiction, and this Court may exercise personal jurisdiction over Defendants.

**NATURE OF THE ACTION**

4. Plaintiff brings this action against Defendants for their violations of the Securities Act of 1933 (the "Securities Act"), the Securities Exchange Act of 1934 (the "Exchange Act"), and Nevada's Unfair Competition Law and for breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, conversion, promissory estoppel, fraud, and negligent misrepresentation.

5. Plaintiff seeks compensatory damages, including lost profits, restitution, disgorgement of profits, pre- and post-judgment interest at the statutory legal rate of 10% pursuant to the Nevada Civil Code, awards of costs and attorneys' fees pursuant to the Nevada Civil Code, and punitive damages in an amount sufficient to punish and deter Defendants.

6. Plaintiff also seeks injunctive relief to enjoin Defendants' unfair, unlawful, and fraudulent business acts and practices, including (1) an order prohibiting Defendants from continuing to offer and sell unregistered, non-exempt securities, and (2) an order prohibiting Defendants from engaging in any activities that promote or facilitate in any way, directly or indirectly, online gambling.

///

///

## PARTIES

7. Plaintiff, BRENT JAY, is an individual residing in the State of Nevada.

8. In October, 2017 through June, 2018, Plaintiff paid money to and invested in securities and cryptocurrencies offered and sold by SCOTT WALKER, an individual; DISTRIBUTED NETWORK ADVISORS, LLC, a Limited Liability Company, (hereinafter sometimes referred to as "DNA"); BRIAN SANDS, an individual; APRIL SANDS, an individual; BROCK PIERCE, an individual; JAMES GLASSCOCK, and DOES 1-10, inclusive, for the purchase and acquisition of Ethereum ("ETH") and Everpedia IQ Token through an Initial Coin offering ("ICO") also known as the Everpedia ICO Deal ("Everpedia").

9. Plaintiff was induced to pay money and invest and purchase the Wax Tokens based on numerous representations and past dealings with the Defendants. Defendants, and each of them, misrepresented the concept of "staking" which Plaintiff was told was a safe structure of owning Wax Tokens that would increase in value over time. In fact, Plaintiff's ownership of Wax Tokens grew to a value in excess of $788,846, but when Plaintiff attempted to sell his Wax Tokens, Plaintiff needed Defendants' cooperation as they had instituted a "password protection" and Defendants refused to provide the password to Plaintiff. Plaintiff was, as still is, unable to access his Wax Tokens and has watch in anguish while the value of his portfolio has drastically dropped.

10. Plaintiff was induced to pay money and invest and purchase the Ethereum ("ETH"), Everpedia IQ Token, and Wax Tokens based on numerous representations and past dealings with the Defendants.

11. Plaintiff was further persuaded that Defendant BROCK PIERCE ("PIERCE"), who held "secret" meetings in Santa Monica, California and boasted of his extensive experience in cryptocurrency, that PIERCE was overseeing the transaction and had structured the investment in a manner wherein tax consequences would be avoided, since despite running for the U.S. Senate for the State of Vermont, PIERCE had claimed a domicile off shore to avoid paying taxes. Plaintiff was advised by PIERCE that PIERCE had a home in Florida, was campaigning for the Vermont Senate seat, but that he was registered as living in Puerto Rico (a U.S. Territory) but that he had structured his business to circumvent US laws, including tax laws. In retrospect, Plaintiff subsequently learned that PIERCE and WALKER had not avoided tax liability or SEC

registration requirements. They were and are liable for paying taxes and they were and are required to register their offerings with the SEC. They simply did not comply with the statutes and the law, and they have intentionally failed to report their taxable income gains and they have intentionally refused to pay their lawful tax obligations.

12. JAMES GLASSCOCK ("GLASSCOCK") was also present at the "secret" meetings in Southern California, and as a co-founder of DNA, GLASSCOCK supported and participated in the fraudulent structure and scheme to induce JAY and others to purchase the unregistered and illegal Everpedia cryptocurrency tokens.

13. BRIAN SANDS facilitated the sale on behalf of SCOTT WALKER, ("WALKER") by and through WALKER's DNA Fund. APRIL SANDS assisted and participated in the scheme to induce Plaintiff to pay money and undertake the investment. Although Plaintiff bought and paid in full for Everpedia coins, he has not received the coins he bought and for which he paid. Plaintiff's payment was made by delivering Etherium coins valued at that time in excess of $90,000.00. The value of Plaintiff's purchase/investment has fluctuated from the purchase date through the date of trial but estimated to be in excess of One Million Dollars, according to proof. Moreover, Defendants withheld and continue to withhold the password which controls the digital account which holds Plaintiff's Wax Tokens.

14. Plaintiff is ignorant of the true names and capacities of the Defendants sued herein as Does 1 - 20 and therefore sue said Defendants by such fictitious names Plaintiff will amend this Complaint to allege the true names and capacities when the same has been ascertained. All of the Doe Defendants and each of them were the agents and principals of all of the other defendants and were acting in the course and scope of their authority and in concert with one another.

**VENUE**

15. Venue is proper in this District pursuant to 28 U.S.C. § 1391, 15 U.S.C. § 77v, and 15 U.S.C. § 78aa because: (a) the conduct at issue took place and had an effect in this judicial District; (b) a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District; and (c) Defendants have received substantial compensation and other transfers of money by transacting business in this District and engaging in activities that have an effect in this District.

# COUNT 1

## Violation of the Securities Act (15 U.S.C. § 77l(a)(2))

### (Against all Defendants)

16. Plaintiff repeats and re-alleges each and every allegation above as if set forth herein.

17. The Securities Act prohibits the offer and sale of a security by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading. The Securities Act grants Plaintiff a private right of action for damages against Defendants for their violations of this provision.

18. Plaintiff acknowledges that his private action does not, in any way, supersede or take priority over any action (Civil or Criminal) that the Securities and Exchange Commission's Department of Enforcement may decide to initiate against any or all of the Defendants named herein.

19. In marketing the tokens to prospective investors, including Plaintiff, Defendants unlawfully made use of means or instruments of transportation or communication in interstate commerce or of the mails or by means of a prospectus or oral communication to make an untrue statement of material fact and/or omitted to state a material fact necessary in order to make their statements, in light of the circumstances they were made, not misleading.

20. Defendants "offered" and "sold" securities within the meaning of the Securities Act because Defendants solicited Plaintiff and others to make investments in Tokens, actively and knowingly participated in the offer and sale of Tokens to Plaintiff and others, and/or offered or sold Tokens (sold but did not deliver) they held or controlled to Plaintiff.

21. By reason of the foregoing, Defendants have violated 15 U.S.C. §§ 77l(a)(2).

22. Defendants' violation of the Securities Act was a substantial factor in causing Plaintiff damages in connection with his purchases of Token securities. As such, Defendants are liable to Plaintiff for compensatory damages.

///

///

## COUNT 2

### Violation of the Securities Act (15 U.S.C. § 77o(a))

### (Against all Individual Defendants)

23. Plaintiff repeats and re-alleges each and every allegation above as if set forth herein.

24. Section 15 of the Securities Act provides for joint and several liability for "controlling persons" who had sufficient power or influence over a person or entity that violated federal securities laws:

> Every person who, by or through stock ownership, agency, or otherwise, or who, pursuant to or in connection with an agreement or understanding with one or more other persons by or through stock ownership, agency, or otherwise, controls any person liable under section 77k or 77l of this title, shall also be liable jointly and severally with and to the same as extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person had no knowledge of or reasonable ground to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist.

15 U.S.C. § 77o(a).

25. Defendants, and each of them are subject to liability by virtue of their positions with the various entities and their significant influence and supervisory authority over those entities. Defendants, and each of them, served in control and/or management/ ownership positions which provided them power to control and/or influence the actions of the entities. As such, they, and each of them, is a "controlling person" within the meaning of Section 15(a) of the Securities Act, 15 U.S.C. § 77o.

26. Defendant SCOTT WALKER is subject to liability by virtue of his top-level executive positions with the Defendant entities and his significant influence and supervisory authority over them. SCOTT WALKER is the COO and/or CEO of DNA, which provided him the power to control or influence the actions of the entities and persons affiliated with the entities.

SCOTT WALKER is a "controlling person" within the meaning of Section 15(a) of the Securities Act, 15 U.S.C. § 77o.

27. Defendant BROCK PIERCE is subject to liability by virtue of his top-level executive positions with the Defendant entities and his significant influence and supervisory authority over them. BROCK PIERCE is a Co-Founder of DNA and he had the power to control or influence the actions of the entities and persons affiliated with the entities. BROCK PIERCE is a "controlling person" within the meaning of Section 15(a) of the Securities Act, 15 U.S.C. § 77o.

28. Defendant JAMES GLASSCOCK is subject to liability by virtue of his top-level executive positions with the Defendant entities and his significant influence and supervisory authority over them. JAMES GLASSCOCK is a Co-Founder of DNA and he had the power to control or influence the actions of the entities and persons affiliated with the entities. JAMES GLASSCOCK is a "controlling person" within the meaning of Section 15(a) of the Securities Act, 15 U.S.C. § 77o.

29. Defendant BRIAN SANDS is subject to liability by virtue of his top-level position with the Defendant entities and his significant influence and supervisory authority over the companies. BRIAN SANDS had and influenced his power and control to influence the actions of the various entities and also his wife, APRIL SANDS and other persons affiliated with the various entities. BRIAN SANDS is a "controlling person within the meaning of Section 15(a) of the Securities Act, 15 U.S.C. § 77o.

30. Defendant APRIL SANDS is subject to liability by virtue of her top-level position with the various corporate entities and her significant influence and authority over the companies. APRIL SANDS is a "controlling person" within the meaning of Section 15(a) of the Securities Act, 15 U.S.C. § 77o.

31. Defendants' roles as "controlling persons" of entities or persons who violated Section 15 of the Securities Act were a substantial factor in causing Plaintiff's damages.

///

///

///

///

## COUNT 3

### Violation of the Securities Act (15 U.S.C. § 77q(a))

**(Against all Defendants)**

32. Plaintiff repeats and re-alleges each and every allegation above as if set forth herein.

33. The Securities Act prohibits the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly (1) to employ any device, scheme, or artifice to defraud, or (2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser. 15 U.S.C. § 77q(a).

34. Defendants unlawfully used interstate commerce and/or the mails to employ a device, scheme, or artifice to defraud purchasers of tokens, to obtain money or property from those purchasers by means of untrue statements of material facts and omissions to state material facts necessary in order to make the statements they made, in light of the circumstances under which they were made, not misleading, and to engage in transactions, practices, and courses of business which operated and operate as a fraud or deceit upon the purchasers of tokens.

35. By reason of the foregoing, Defendants have violated 15 U.S.C. §§ 77q(a).

36. Defendants' violation of the Securities Act was a substantial factor in causing Plaintiffs damages in connection with their purchases of Token securities. As such, Defendants are liable to Plaintiffs for compensatory damages.

## COUNT 4

### Violation of the Exchange Act (15 U.S.C. § 78j(b) & 17 CFR § 240.10b-5 )

**(Against all Defendants)**

37. Plaintiff repeats and re-alleges each and every allegation above as if set forth herein.

38. The Exchange Act prohibits the direct or indirect use of any means or instrumentality of interstate commerce or of the mails (a) To employ any device, scheme, or artifice to defraud, (b) To make any untrue statement of a material fact or to omit to state a material

fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

39. Defendants knowingly and intentionally or recklessly used interstate commerce and/or the mails to employ a device, scheme, or artifice to defraud investors, to obtain money or property from investors by means of untrue statements of material facts and omissions to state material facts necessary in order to make the statements they made, in light of the circumstances under which they were made, not misleading, and to engage in transactions, practices, and courses of business which operated and operate as a fraud or deceit upon the purchasers of tokens.

40. Plaintiff reasonably relied to his detriment on the material misrepresentations made by Defendants and upon the expectation that Defendants would disclose all material facts relating to their potential and actual investment in tokens, including all material facts regarding Defendants' ability and plans to release tokens to investors.

41. Defendants' lack of appropriate preparation for, failed execution of, and/or selective, advanced release of tokens to certain favored investors, coupled with their intentional decision to steal, convert, or otherwise withhold and refuse to deliver, proximately caused Plaintiff's damages, including millions of dollars of lost profits.

42. By reason of the foregoing, Defendants have violated 15 U.S.C. §§ 77q(a) and are liable to Plaintiff for compensatory damages.

## COUNT 5
### Violation of the Exchange Act (15 U.S.C. § 78t)
### (Against all Individual Defendants)

43. Plaintiffs repeat and re-allege each and every allegation above as if set forth herein.

44. The Exchange Act provides for joint and several liability for "controlling persons" who had sufficient power or influence over a person or entity that violated federal securities laws:

> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to

whom such controlled person is liable (including to the Commission in any action brought under paragraph (1) or (3) of section 78u(d) of this title), unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t.

45. Defendant SCOTT WALKER is subject to liability by virtue of his executive positions with the Defendant entities and his significant influence and supervisory authority over them. SCOTT WALKER is the founder and serves as its CEO and/or COO and Director, which provided him the power to control or influence the actions of the various and persons affiliated with the entities. SCOTT WALKER is a "controlling person" within the meaning of the Exchange Act, 15 U.S.C. § 78t.

46. Defendant BROCK PIERCE is subject to liability by virtue of his executive positions with the Defendant entities and his significant influence and supervisory authority over them. BROCK PIERCE is a co-founder of DNA and serves as a Director, which provided him the power to control or influence the actions of the various and persons affiliated with the entities. BROCK PIERCE is a "controlling person" within the meaning of the Exchange Act, 15 U.S.C. § 78t.

47. Defendant SCOTT WALKER is subject to liability by virtue of his executive positions with the Defendant entities and his significant influence and supervisory authority over them. JAMES GLASSCOCK is a co-founder of DNA and serves as a Director, which provided him the power to control or influence the actions of the various and persons affiliated with the entities. JAMES GLASSCOCK is a "controlling person" within the meaning of the Exchange Act, 15 U.S.C. § 78t.

48. Defendant BRIAN SANDS is subject to liability by virtue of his top-level executive positions with the entities and his significant influence and supervisory authority over them. BRIAN SANDS was the agent or ostensible agent, which provided him the power to control or influence the actions of the entities and persons affiliated with the entities. BRIAN SANDS is a "controlling person" within the meaning of the Exchange Act, 15 U.S.C. § 78t.

49. Defendant APRIL SANDS is subject to liability by virtue of her position with the various entities and her relationship to BRIAN SANDS who had supervisory authority over the various companies. APRIL SANDS was actively engaged with the entities which provided her the power to control or influence persons affiliated with the various entities. APRIL SANDS is a "controlling person" within the meaning of the Exchange Act, 15 U.S.C. § 78t.

50. As "controlling persons," Defendants proximately caused Plaintiffs damages, including millions of dollars of lost profits.

## COUNT 6

**Unfair Business Acts or Practices (Nevada Code Title 52, Chapter 598, et seq.)**

**(Against all Defendants)**

51. Plaintiff repeats and re-alleges each and every allegation above as if set forth herein.

52. The acts and practices of Defendants, and each of them, offend established public policy and/or are immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. Defendants therefore engaged in unfair business acts and practices within the meaning of Nevada Code Title 52, Chapter 598, et seq.

53. Defendants' unfair business acts or practices were a substantial factor in causing Plaintiff to lose money or property in which he had a vested interest.

54. Plaintiff is entitled to recover restitution and disgorgement of profits and seek injunctive relief to enjoin Defendants' unfair business acts and practices which are ongoing.

## COUNT 7

**Unlawful Business Acts or Practices (Nevada Code Title 52, Chapter 598, et seq.)**

**(Against all Defendants)**

55. Plaintiff repeats and re-alleges each and every allegation above as if set forth herein.

56. By violating various statutes, rules, and regulations, including without limitation those referenced above and 15 U.S.C. § 77e(a), 15 U.S.C. § 77e(c). Defendants, and each of them, engaged in unlawful business practices within the meaning of Nevada Code Title 52, Chapter 598, et seq..

57. Defendants' unlawful business acts or practices were a substantial factor in causing Plaintiff to lose money or property in which he had a vested interest.

58. Plaintiff is entitled to recover restitution and disgorgement of profits and seek injunctive relief to enjoin Defendants' unlawful business acts and practices which are ongoing.

## COUNT 8

**Fraudulent Business Acts or Practices (Nevada Code Title 52, Chapter 598, et seq.)**

**(Against all Defendants)**

59. Plaintiff repeats and re-alleges each and every allegation above as if set forth herein.

60. Defendants, and each of their business acts or practices were likely to deceive consumers and therefore Defendants engaged in fraudulent business practices within the meaning of Nevada Code Title 52, Chapter 598, et seq..

61. Defendants' fraudulent business acts or practices were a substantial factor in causing Plaintiff to lose money or property in which he had a vested interest.

62. Plaintiff is entitled to recover restitution and disgorgement of profits and seek injunctive relief to enjoin Defendants' unlawful business acts and practices which are ongoing.

## COUNT 9

**Breach of Contract**

**(Against all Defendants)**

63. Plaintiff repeats and re-alleges each and every allegation above as if set forth herein.

64. Pursuant to Defendants' offer to sell tokens, Plaintiff and Defendants entered into an agreement whereby Plaintiff purchased tokens from Defendants.

65. Plaintiff did all, or substantially all, of the significant things that the agreement required or was excused from having to do so.

66. Defendants, and each of them, breached their obligations under the agreement, including without limitation their obligation to release the tokens in a fair and timely manner that did not give certain investors preference over others.

67. Defendants' breach of contract was a substantial factor in causing Plaintiff's damages.

## COUNT 10

**Breach of the Covenant of Good Faith and Fair Dealing**

**(Against all Defendants)**

68. Plaintiff repeats and re-alleges each and every allegation above as if set forth herein.

69. Under Nevada law, every contract has an implied covenant of good faith and fair dealing which requires that the parties refrain from doing anything to unfairly interfere with the right of the other party to receive the benefits of the contract.

70. Defendants breached the covenant of good faith and fair dealing when they selectively distributed tokens to certain, preferred investors while failing and refusing to release Plaintiff's tokens for days and months while other investors were able to take advantage of the opportunity to maximize profits.

71. Defendants' breach of the covenant of good faith and fair dealing was a substantial factor in causing Plaintiff's damages.

## COUNT 11

**Unjust Enrichment**

**(Against all Defendants)**

72. Plaintiff repeats and re-alleges each and every allegation above as if set forth herein.

73. As a result of their failure and refusal to timely release Plaintiff's tokens, Defendants, and each of them, have been unjustly enriched at the expense of Plaintiff.

74. Plaintiff is entitled to recover monies from Defendants, and each of them, to remedy such unjust enrichment.

## COUNT 12

**Conversion**

**(Against all Defendants)**

75. Plaintiff repeats and re-alleges each and every allegation above as if set forth herein.

76. Plaintiff had a right to timely obtain and possess the tokens at the same time as other investors.

77. Defendants, and each of them, intentionally and substantially interfered with Plaintiff's tokens by preventing Plaintiff from having access to them.

78. Defendants did so without Plaintiff's consent.

79. Defendants' conduct was a substantial factor in causing Plaintiff's harm.

### COUNT 13

**Promissory Estoppel**

**(Against all Defendants)**

80. Plaintiff repeats and re-alleges each and every allegation above as if set forth herein.

81. Defendants made a promise to distribute tokens to Plaintiff and other investors on a fair, non-preferential basis.

82. Defendants, however, did not intend to perform this promise when they made it.

83. Defendants intended that Plaintiff rely on their promise.

84. Plaintiff reasonably relied on Defendants' promise.

85. Defendants did not distribute tokens to Plaintiff and other investors on a fair, non-preferential basis.

86. Plaintiff's reliance on Defendants' promise was a substantial factor in causing Plaintiff's harm.

### COUNT 14

**Fraud**

**(Against all Defendants)**

87. Plaintiff repeats and re-alleges each and every allegation above as if set forth herein.

88. Defendants had a duty to accurately and completely disclose material information to Plaintiff regarding the potential investments in tokens.

89. Defendants, and each of them, induced Plaintiff to purchase tokens by making material, false representations and/or omissions that Defendants knew to be false and/or materially incomplete or which were made recklessly without regard for their truth.

90. Defendants intended that Plaintiff rely on their misrepresentations.

91.     Plaintiff reasonably relied to his detriment on the material misrepresentations made by Defendants and upon the expectation that Defendants would disclose all material facts.

92.     Plaintiff's reliance was a substantial factor in causing Plaintiff's damages.  In addition to seeking compensatory damages, because of the malicious, oppressive, and fraudulent nature of Defendants' conduct, Plaintiff also seeks punitive damages in an amount sufficient to punish and deter Defendants.

## COUNT 15

**Negligent Misrepresentation**

**(Against all Defendants)**

93.     Plaintiff repeats and re-alleges each and every allegation above as if set forth herein.

94.     Defendants, and each of them, induced Plaintiff to purchase tokens by making material misrepresentations and/or omissions for which they had no reasonable grounds to believe to be true and complete.

95.     Defendants intended that Plaintiff rely on their misrepresentations.

96.     Plaintiff reasonably relied to his detriment on the material misrepresentations made by Defendants and upon the expectation that Defendants would disclose all material facts.

97.     Plaintiff's reliance was a substantial factor in causing Plaintiff's damages.

## COUNT 16

**Elder Abuse**

**(Against all Defendants)**

98.     Plaintiff repeats and re-alleges each and every allegation above as if set forth herein.

99.     For the reasons set forth herein, Defendants, and each of them, engaged in elder abuse, as defined in the Nevada Code, Sections 411395, et. seq.

100.    Plaintiff is an "elder" as defined in the Statute.

101.    Plaintiff is entitled to "double damages" as provided for in the Statute.

102.    Plaintiff in also entitled to recover his attorneys fees and costs, as provided for in the Statute.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment and relief against Defendants, and each of them, as follows:

A.  Declaring the sale of tokens a security under the federal and state securities laws;

B.  Declaring that Defendants offered and sold unregistered securities in violation of federal and state securities laws;

C.  Declaring that Defendants are liable to Plaintiff under the Securities Act, the Exchange Act, and Nevada's Unfair Competition Law;

D.  Awarding Plaintiff compensatory damages, including lost profits;

E.  Ordering Defendants to provide restitution and to disgorge profits to Plaintiff;

F.  Awarding Plaintiff punitive damages in an amount sufficient to punish and deter Defendants;

G.  Awarding Plaintiff pre- and post-judgment interest at the statutory legal rate of 10% pursuant to the Nevada Code;

H.  Awarding Plaintiff attorneys' fees pursuant to Statute;

I.  Awarding Plaintiff "Double Damages pursuant to Statute;

J.  Awarding Plaintiff the costs of this action;

K.  Enjoining Defendants, and each of them, from continuing to offer and sell unregistered, non-exempt securities;

L.  Enjoining Defendants, and each of them, from engaging in any activities that promote or facilitate in any way, directly or indirectly, sale or conveyance of cryptocurrency;

M.  Ordering such other and further relief as may be just and proper.

DATED: August 1, 2022

Respectfully Submitted,

By: */s/ Martin Muckleroy*
Martin A. Muckleroy
MUCKLEROY LUNT, LLC

Attorney for Plaintiff,
BRENT JAY

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all claims in this Complaint so triable.

Dated: June 24, 2022

                        */s/ Martin Muckleroy*
                        MARTIN MUCKLEROY
                        MUCKLEROY LUNT
                        6077 S. Fort Apache Road, Suite 140
                        Las Vegas, NV 89148
                        Telephone:   (702) 907-0097
                        Facsimile:   (702) 938-4065
                        martin@muckleroylunt.com

                        *Counsel for Plaintiff*